OPINION OF THE COURT
Anthony A. Scarping, Jr., J.
This is a postjudgment matrimonial proceeding wherein various motions and cross motions were consolidated and referred to a hearing. The nature of the relief sought may be summarized as follows:
On November 25, 1996, plaintiff brought an order to show cause seeking enforcement of the defendant’s obligation to pay child support and attorney’s fees. On January 2, 1997, the defendant submitted a cross motion seeking a downward modification of his child support obligations. The court (Barone, J.) referred these matters to a hearing and directed disclosure.
*4 On May 15, 1997, plaintiff brought an order to show cause seeking to compel the deposition of the defendant and his current wife and further seeking to restrain the transfer of assets. On June 17, 1997, the defendant submitted a cross motion seeking to compel blood tests for his daughter, Francesca. The court (Barone, J.) granted plaintiffs order to show cause and denied the defendant’s cross motion. Thereafter, the court (Barone, J.) rescinded the temporary restraining order previously imposed.
On September 16, 1997, plaintiff brought an order to show cause seeking an immediate judgment for all child support arrears allegedly occurring prior to January 1, 1997 and further seeking to void certain transfers of assets made by defendant to his current wife. On October 9, 1997, the defendant submitted a cross motion seeking an award of attorney’s fees. Although no decision was rendered on these applications, it is agreed by the parties that the court (Barone, J.) referred these matters to the hearing which had been previously ordered but not held.
On January 2, 1998, this matter was transferred to me for disposition. Upon completion of all court-ordered discovery, the plaintiff submitted an application dated May 26, 1998 seeking a finding and order of contempt. On June 3, 1998, the defendant submitted a cross motion seeking attorney’s fees and sanctions.
Meanwhile, on June 1, 1998, the court commenced the hearing on all the outstanding issues raised in the various applications. This hearing continued until completion on the following dates: June 2, 3, 4, 8, 9, 10, 11, 15, 17, 18, 22, and 23, 1998.
Upon all the papers submitted on the motions and cross motions and the testimony and evidence submitted at the hearing, the court makes the following findings of fact and conclusions of law.
The parties were married on March 18, 1976. There are three children born of this marriage: David Armytage Jenkins (date of birth Aug. 11, 1978); Francesca Jenkins (date of birth June 23, 1981); and Stephanie Jenkins (date of birth June 18, 1982).
On December 20, 1984, the parties entered into a settlement agreement and the terms of that agreement were incorporated, but not merged, into a judgment of divorce dated March 6, 1985. On October 4, 1989, the parties entered into a “so-ordered” stipulation which amended certain provisions of the agreement and judgment. Pursuant to a court order dated *5 January 24, 1990, the parties entered into another “so-ordered” stipulation which clarified certain provisions of the prior agreement, judgment, and stipulation. On March 29, 1990, the parties entered into a third “so-ordered” stipulation which further amended certain provisions of the prior agreement, judgment, and stipulations relating to visitation, child support, and additional child support (i.e., educational and extracurricular activity expenses). The March 29, 1990 stipulation also reaffirmed, ratified, and reiterated the terms of the original agreement and judgment except to the extent expressly modified.
CHILD SUPPORT
Pursuant to the terms of the March 29, 1990 stipulation, defendant was required to pay $11,000 per year, per child (i.e., $33,000/year) as and for child support. In addition, defendant continued to be responsible for the children’s educational expenses (except for Francesca’s and Stephanie’s expenses at St. Paul’s Parochial School), medical expenses, “approved” extracurricular activities, and summer camp.
The plaintiff has satisfied her burden of demonstrating that defendant has failed to pay any child support for the months of September, October, November, and December of 1996.[1] The plaintiff has also established that defendant has failed to make child support payments since he filed his application for a downward modification in January 1997. On this point, it bears noting that pursuant to article V, paragraph C of the original agreement, the defendant was required to make child support payments during the pendency of any court proceeding wherein a modification of child support was sought.
The total amount of child support arrears for the period commencing September 1996 and ending February 1999 is $82,500 (i.e., 30 months X $2,750/month). In arriving at this amount, the court has declined to consider a “letter agreement” dated August 8, 1991 which purports to further reduce defendant’s monthly child support obligation. This “letter agreement” was not executed with the formalities required by law and mandated by article XXTV of the parties’ original agreement.
The court also declines plaintiff’s request that defendant’s total child support obligations after January 1, 1996 be limited to one-half of the children’s educational, medical, camp, and activities expenses. This accommodation would violate the pro *6 vision of the parties’ agreement and stipulation and would be in direct contravention of the Child Support Standards Act (CSSA) which requires support to be based on the parties’ actual or imputed income. To grant plaintiffs request would be tantamount to the court rewriting the parties’ agreement in such a way as to reward the intentional wrongdoing of the defendant and punish the children who are the victims of defendant’s wrongdoing.
The testimony and documentary evidence also amply demonstrates that the defendant failed to pay educational expenses, medical/dental expenses, and expenses for summer camp and extracurricular activities. As of December 31, 1996, these costs were as follows:
Educational expenses Medical / dental expenses Summer camp Extracurricular activities $ 92,031 8,098 17,617 17,738

$135,484

However, the plaintiff has failed to sufficiently establish that she obtained defendant’s approval of the summer camp expenditures as required by the parties’ agreement. Therefore, no award will be made for this expenditure. The plaintiff has sufficiently demonstrated defendant’s approval of the children’s extracurricular activities which were not different in kind than those expressly approved in the parties’ stipulation. The total amount of arrears awarded for additional child support items through December 31, 1996 is $117,867 ($92,031 + $8,098 + $17,738). The amount of arrears for additional child support items for the period January 1, 1997 through April 1998 is $60,000. Thus, the total child support arrears awarded herein is $260,367 ($82,500 + $117,867 + $60,000).
defendant’s request for downward modification
The defendant contends that he is financially unable to satisfy his child support obligations. Although he concedes that prior to 1990, he earned substantial income (“in excess of $200,000 per year”), and had substantial investments, he claims that between 1992 and 1996, he suffered “financial reversals.” He contends that, at present, he earns approximately $12,000/year[2] and has no investments or assets of significant value.
*7 These claims rely heavily upon the testimony of the defendant himself and his current wife. Unfortunately, the court finds their testimony to be self-serving, evasive, improbable, forgetful, inconsistent, and in some instances, demonstrably false or misleading. Therefore, the court chooses to disregard such testimony except to the extent expressly credited herein.
The defendant has failed to establish any substantial unanticipated change of circumstances warranting a downward modification. The documentary evidence and credible testimony reveal that defendant’s diminishing income and financial reversals are both exaggerated and self-created. At the time of the entry of the judgment of divorce (Mar. 6, 1985), defendant retained in excess of $4 million in assets. In a credit application prepared by the defendant on January 11, 1985, he represented his net worth to be approximately $4.5 million. In a subsequent credit application prepared by the defendant on July 7, 1990, he estimated his net worth to be approximately $1.6 million. This precipitous decline in net worth apparently formed the basis of one of defendant’s earlier requests for downward modification and resulted in the March 29, 1990 stipulation which significantly reduced defendant’s child support obligation (from $50,000/year to $33,000/year).
The determination as to whether defendant is entitled to a further downward modification must be made by comparing his financial condition at the time of the March 1990 stipulation with his financial condition as of the date of his most recent request for a downward modification (Jan. 2, 1997). The defendant’s tax returns for the years in question coincide with defendant’s testimony to the extent they generally reveal a diminishing income and dwindling asset ownership.[3] However, the diminishing income is derived from defendant’s self-employment, and defendant was repeatedly unable to explain or remember large deposits into his personal accounts from unknown sources.[4] In addition, during the period of time defendant’s earlier application for a downward modification was *8 pending (1989-1990), the defendant transferred ownership of his two largest remaining assets to his current wife.[5]
The defendant’s income from his self-employment is largely determined by how much he chooses to work and how he chooses to account for the business’ earnings and expenses. The court finds that the defendant has done everything in his power to conceal and minimize his reported income. When confronted with bank statements which show large deposits into his accounts, defendant claims to have no knowledge of where this money came from. Upon consideration of all of defendant’s income from disclosed and undisclosed sources, it appears that his income is substantially higher than his 1990 income. Additionally, the court finds that by reason of defendant’s education, training, experience, and earnings history,[6] the defendant is easily capable of earning in excess of $120,000/ year.[7] The testimony by defendant’s employment consultant[8] was almost comical. Totally absent from such testimony was any serious explanation as to why a person with defendant’s resumé is incapable of finding suitable employment at a time when this country is experiencing its lowest unemployment rate in over 50 years. Instead, the testimony revealed that defendant has made no real effort to look for gainful employment, preferring instead to understate his own income and live off the income his current wife earns and the value of the assets he has transferred to her.
The court is also unpersuaded with defendant’s “dwindling assets” claim. The defendant’s residence in Tuxedo Park was purchased prior to his most recent marriage. Yet, during the late 1980’s and early 1990’s, defendant transferred all of his interest in this residence to his new wife. This asset has an appraised value of $1,250,000 with an outstanding mortgage of $850,000. In return for this transfer, defendant allegedly received $60,000 from his current wife. Clearly, this was inadequate consideration for the transfer of $400,000 worth of equity. Six months after this transfer, defendant and his cur *9 rent wife entered into an agreement whereby she agreed to give the defendant 50% of the proceeds of any sale of the residence. Thus, despite the transfer, the defendant continued to retain an interest in the residence. It is also evident that in some years, the defendant transferred more money into his current wife’s account than she paid in monthly mortgage payments.
The alleged transfer of defendant’s one-half interest in Urban Realty to his current wife is equally distressing. The defendant’s trial testimony was inconsistent with his prior deposition testimony. What is clear is that defendant’s current wife paid, at best, $66,000[9] for stock valued at $190,000. Furthermore, the defendant actively sought to keep the proceeds of Urban Realty stock transfers out of his accounts while, at the same time, representing to others that the stock was “his.”
In short, these transfers are not the type of bona fide, arm’s length transactions which would be recognized by this court. Instead, they appear to be conveniently contrived by the defendant and his current wife for the purpose of avoiding the defendant’s creditors including his former wife. Since the defendant has failed to establish any substantial, unanticipated change of circumstances, his application for a downward modification is denied.
plaintiff’s fraudulent conveyance claims
Plaintiff seeks to have the defendant’s transfers of the Tuxedo Park residence and Urban Realty interest declared null and void pursuant to the fraudulent conveyance provisions of the Debtor and Creditor Law (see, Debtor and Creditor Law §§ 270-279). In order to prevail on these claims, it is incumbent upon the plaintiff to show, by clear and convincing evidence, that the defendant transferred these assets to his current wife with actual intent to hinder, delay, or defraud creditors (see, e.g., Shelly v Doe, 173 Misc 2d 200, affd as mod 249 AD2d 756). The plaintiff is not, however, required to produce direct evidence of intent (see, Elgin Sweeper Co. v Melson Inc., 884 F Supp 641). Instead, in determining whether a conveyance was fraudulent, the courts will consider “badges” of fraud which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent (see, Pen Pak Corp. v LaSalle Natl. Bank, 240 *10 AD2d 384). These “badges” or indicia of fraud include the close relationship among the parties to the transaction, inadequacy of consideration, secret and hasty transfer not in the usual course of business, transferor’s knowledge of creditor’s claim and his or her inability to pay it, use of dummies or fictitious parties, and retention of control of property by transferors after conveyance (see, Shelly v Doe, 249 AD2d 756).
The court is satisfied that plaintiff has sufficiently established that the defendant’s transfers of his interest in the Tuxedo Park residence and the Urban Realty investment were made with the actual intent to hinder and defraud the plaintiff in her efforts to collect child support owed pursuant to the parties’ stipulation and agreement. These transfers were made to the defendant’s current wife with whom he obviously shared a close relationship (see, e.g., AMEV Capital Corp. v Kirk, 180 AD2d 775, appeal dismissed 80 NY2d 825). The transfers were made at a time when the defendant had diminishing income, and when he was aware of the plaintiff’s ongoing litigation wherein she was attempting to collect child support arrears (see generally, In re Zahkar, 133 Bankr 3). In addition, the consideration for these transfers was inadequate, and the defendant retained substantial control over the assets after these transfers (see, Heimbinder v Berkovitz, 175 Misc 2d 808; Apple Bank for Sav. v Contaratos, 204 AD2d 375; Lending Textile v All Purpose Accessories, 174 Misc 2d 318) and the transfers rendered him unable to pay his child support obligations.
The court is also satisfied that this application to set these transfers aside was timely. Since the plaintiff’s claim and proof reveals defendant’s actual fraud, the proper Statute of Limitations is six years from the date of the fraud or two years from the date of plaintiff’s discovery of the fraud (see, Leone v Sabbatino, 235 AD2d 460). The mere fact that plaintiff knew that these transfers occurred and could have obtained or inspected public records is not determinative as to whether she exercised reasonable diligence to discover the fraud (see, McGuinness v Standard Drywall Corp., 193 AD2d 518). The record reflects that during the various postjudgment proceedings, the plaintiff repeatedly sought financial disclosure from the defendant. Although some of these proceedings were negotiated and settled, no financial disclosure was provided until it was court ordered upon these applications. Thus, it was not until defendant provided financial discovery in response to the January 1997 cross motion for downward modification, and plaintiff’s May 1997 order to show cause (which sought to compel the deposi *11 tions of the defendant and his wife) that plaintiff discovered the fraud. Therefore, this action was timely commenced within two years of plaintiffs discovery of the fraud.
 Notwithstanding the above, the court is not prepared at this time to declare these transfers null and void. Since the defendant’s current wife is the transferee of these assets, her interest will be inequitably affected by the judgment.[10] Thus, she is a necessary party (see, Deleno v Deleno, 61 AD2d 788, lv denied 45 NY2d 708). Pursuant to CPLR 1001 (b), when a person who should be joined has not been made a party, the court, on its own motion, may order that person to be summoned. The court may exercise broad discretion in this area, and a party may be joined at any stage of the proceeding (see, Albert C. v Joan C., 110 AD2d 803, and cases cited therein).
In determining whether to permit this action to proceed and require the joinder of defendant’s current wife, the court has considered (1) that plaintiff would be foreclosed from any other effective remedy by reason of the running of the Statute of Limitations, (2) the lack of prejudice to the party to be joined since she is fully aware of these proceedings and has given testimony herein, and (3) that no effective judgment may be rendered in the absence of the party to be joined (see, CPLR 1001 [b] [1], [2], [3], [5]).
In accordance herewith, plaintiff is directed to serve a summons and complaint upon the defendant’s current wife within 30 days of the date of entry of this decision and order. The newly joined defendant shall serve and file responsive papers within 20 days of the service of the summons and complaint. Upon service of the responsive papers, the parties are directed to contact the court to arrange an immediate conference.
plaintiff’s contempt application
To sustain a finding of civil contempt based upon a violation of a court order, it must be shown that the mandate purportedly violated was clear and the violation established with reasonable certainty (see, Richards v Estate of Kaskel, 169 AD2d 111, Iv dismissed in part 78 NY2d 1042). There must also be a showing that the conduct complained of was calculated to or actually did defeat, impair, or prejudice the rights or remedies of a party to a civil proceeding (supra). Once the requisite showing is made, the nonpaying spouse has the burden of go *12 ing forward with evidence of his/her inability to make the required payments (see, Kawar v Kawar, 231 AD2d 681).
In the instant case, the record reflects that on December 20, 1984, the parties entered into a settlement agreement which contained express provisions concerning the defendant’s obligation to pay child support and additional child support. The terms of this agreement were incorporated, but not merged, into a judgment of divorce on March 6, 1985. The agreement and judgment were amended and clarified by the parties pursuant to various so-ordered stipulations. On March 29, 1990, the parties entered into a “so-ordered” stipulation which amended certain provisions of the prior agreement and judgment relating to child support and additional child support, and reaffirmed and ratified all the other provisions of the agreement and judgment. The March 29, 1990 stipulation contains clear and express provisions concerning the defendant’s obligations to pay child support and additional child support. At all times during the proceedings which resulted in the agreement and stipulation, the defendant was represented by counsel and fully aware of the nature of this obligation pursuant to the agreement and stipulation.
The order to show cause seeking an order of contempt was properly served, and the defendant has answered that application, appeared with counsel, and had a full and fair opportunity to present evidence on his behalf at the hearing. The credible evidence demonstrates clearly and convincingly that the defendant has wilfully failed and refused to pay child support as required pursuant to the terms of the “so-ordered” stipulation entered March 29, 1990 (see, Bulow v Bulow, 121 AD2d 423). The extent of the defendant’s nonpayment and the precise allocation of those arrearages between child support and additional child support items is set forth in detail supra (at 5-6). For clarity, they are summarized as follows:

$ 82,500 Child support arrearages for the period 9/96 through 2/99

92,031 Educational expenses for the period 1/90 through 12/96

8,098 Medical and dental expenses for the period 1/90 through 12/96

17,738 Extracurricular activity expenses for the period 1/90 through 12/96

*13 60,000 Educational expenses, medical, and dental expenses, and extracurricular activity expenses from 1 / 97 through 3 / 99

$260,367 Total amount due for child support and additional child support

The defendant’s wilful failure and refusal to pay these obligations was calculated to and did actually defeat, impair, and prejudice plaintiffs rights and remedies. Plaintiff has been forced to engage in almost nonstop litigation with the defendant for over 13 years in order to preserve her rights and in an attempt to extract payments. She has been forced to exhaust her own financial resources and those of her current spouse in order to support, educate, and provide medical/dental care for the children. She has also been forced to amass huge legal fees in the process of enforcing the orders and stipulations.
Although the defendant has cried poverty almost from the inception of the judgment of divorce, he has managed to live the “high life” with expensive homes, vacations, and country club memberships. He claims to have very limited income, but cannot explain, nor can he deny, the huge sums of money that come into his accounts and which are transferred to his current wife’s accounts. It is also evident that the defendant has transferred valuable assets to his current wife for less than adequate consideration and thereby attempted to render himself incapable of meeting his financial obligations to his children. Finally, it clearly appears that the defendant is capable of earning many times his current income (see, Matter of Cox v Cox, 133 AD2d 828).
It is apparent that the usual forms of inducement and enforcement are or would be ineffective. Since defendant is self-employed, an income execution is useless, and the asset transfers render meaningless any efforts to garnish same. In addition, the defendant has been successful in delaying or avoiding the payment of other money judgments, and there is no reason to believe that any fine or threat of fine from this court would change the defendant’s attitude or compel his compliance (see, e.g., Anderson v Anderson, NYLJ, Dec. 2, 1997, at 28, col 6).
In accordance with the foregoing, the court finds that the defendant wilfully violated the March 29, 1990 so-ordered stipulation by failing to pay child support in the total sum of $260,367, and that his actions were calculated to, and actually did defeat, impair, impede, and prejudice plaintiffs rights and remedies.
*14 As punishment for his contempt, the defendant shall be incarcerated for a period up to six months. The defendant may purge himself of this contempt by making a partial payment in the sum of $100,000 to plaintiff within 30 days from the date of service of this decision and order and providing to the court within the same time an acceptable payment schedule and adequate security for those payments.
The defendant shall appear on April 12, 1999, at 9:30 a.m. in room 1615 of the Westchester County Courthouse for execution of sentence. If the defendant fails to appear, a warrant will issue.
COUNSEL FEES
Defendant’s applications for attorney’s fees and sanctions are denied. The court finds no merit to the defendant’s contentions that he is unable to make his court-ordered child support payments, or that it was plaintiff who created the need for repeated court intervention. Instead, the court finds that it is the defendant who, by his contemptuous conduct, has forced plaintiff to continuously litigate in order to preserve her rights and secure permissible remedies.
Plaintiff’s present outstanding legal bill is $110,804. Plaintiff’s counsel represents that approximately half of this amount reflects fees incurred in bringing enforcement proceedings. After considering all of the relevant factors including the respective financial position of the parties, the wilfulness of defendant’s conduct, the nature of the services rendered by counsel, the complexity of the matter, the time expended, and the results achieved, the court awards plaintiff counsel fees in the sum of $70,000. This sum shall be paid by defendant directly to plaintiff’s counsel within 60 days from service of a copy of this decision and order.
INTEREST, COSTS, AND OTHER EXPENSES
The defendant shall also pay, and any judgment or order hereon shall reflect, interest, costs, and expenses of this proceeding. Interest on all arrears shall be computed as of the date each installment or amount became due. Plaintiff shall submit a single bill of costs.

. The defendant’s cross motion for a downward modification was brought in January 1997.

. Defendant’s testimony was that he earned approximately $6,000 in 1998 as of the date of trial. Defendant reported income of $48,000/year on his 1996 and 1997 Federal tax returns.

. For example, defendant’s income tax returns for 1995 reveal income attributable to him of approximately $91,000 while the tax returns for 1996 and 1997 reveal income of approximately $48,000 per year.

. In 1997 alone, the defendant admitted that he deposited approximately $170,000 into his account although his reported income was only $48,000. Defendant concluded that this unearned income from unknown sources should not be considered for child support purposes because it is “nonrecurring.”

. The Tuxedo Park residence and the Urban Realty real estate venture.

. The defendant has a B.A. degree from Harvard and an MBA degree from Columbia. He has earned as much as $500,000 in a single year and concedes that he earned in excess of $200,000/year for several consecutive years prior to 1990.

. A salary of $120,000 would yield a basic child support amount pursuant to CSSA guidelines of approximately $33,000/year which is equal to his current obligation (e.g., $120,000 — $6,800 [PICA] X 29% = $32,828/year).

. Mr. Robert Swain of Swain Consulting Group.

. The only documented payment from defendant’s current wife to defendant for the shares is a check in the sum of $6,000. The $66,000 figure came from defendant’s unsupported testimony.

. Although the defendant’s wife has not been joined, she did appear with counsel to give testimony in this proceeding.