OPINION OF THE COURT
Carolyn E. Demarest, J.
This action by plaintiffs claiming damages against defendants for fraud seeks to enforce the rights of the corporate plaintiff and its sole stockholder against defendant Joseph Berkovitz, also known as Joseph Berkowitz, personally based upon his alleged guarantee of the promissory note executed by him on behalf of the corporate defendant Formadyne Indus *810 tries, Inc. on June 12, 1990 (Note) and further seeks to invalidate various transfers to defendants alleged to have been made in violation of Debtor and Creditor Law §§ 273 and 276 and the alleged fiduciary duty of the individual defendants to the creditors of Formadyne. Plaintiffs’ complaint demands a judgment against all defendants in the amount of $250,000 with interest, plus attorney’s fees and punitive damages.
A nonjury trial was held before Justice Frank Vaccaro on October 22, 24, 25 and 28, 1996. At the conclusion of trial, Justice Vaccaro, by order dated October 29, 1996, sua sponte enjoined defendants from transferring any property pending the final decision of the court, and counsel for the parties were given the opportunity to provide proposed findings of fact and posttrial memoranda of law. Following the death of Justice Vaccaro at the end of February 1997, this matter was transferred to me for decision upon the agreement of the parties’ attorneys. Decision was delayed by the loss of the original exhibits and counsels’ delay in providing duplicates thereof. Upon review of the testimony and documentary evidence adduced at the bench trial, the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
Plaintiff Lawrence Heimbinder was the sole shareholder of Redi-Records Industries, Inc. (Redi-Records) which was in the business of printing commercial forms. On June 12, 1990, RediRecords sold its assets to defendant Formadyne Industries, Inc. (Formadyne) for $300,000, of which $50,000 was paid at closing, with the balance of $250,000 to be paid, pursuant to the terms of the promissory note executed by defendant Joseph Berkovitz as president of Formadyne, monthly over a period of five years, commencing October 15, 1990, with interest of 10% on the balance and 15% on any defaulted principal and interest. Defendants Joseph Berkovitz and his wife, Barbara Berkovitz (sued herein as Barbara Jeremías Berkowitz), were the sole shareholders of Formadyne. At the closing, Joseph Berkovitz produced a document, called a “heter iska”, originally printed in Hebrew (a language not understood by plaintiff Heimbinder) but which was translated into English by Mr. Berkovitz and signed by both Mr. Heimbinder and Mr. Berkovitz. Plaintiffs contend this document personally guaranteed the payment of the Note. Only the English translation will be considered by this court.
Included in the sale were Redi-Records’ inventory, equipment, trade name, customer orders, customer list, and certain *811 enumerated machinery. Redi-Records subsequently changed its name to R & R Closing Corp. (R & R). Immediately after the sale, Mr. Berkovitz hired a trucker who, over a period of several days, loaded at least 10 trucks and vans, some 40 feet long, with the inventory and equipment in the Redi-Records’ plant in Bay Shore for delivery to the Formadyne plant in Brooklyn. Pursuant to the employment agreement, Mr. Heimbinder continued to work for defendants at Formadyne for 2V2 weeks so as to effect a smooth transition of the business. On July 2, 1990, defendants filed a business certificate in Kings County indicating that they were doing business as “Redi-Records”.
On October 15, 1990, defendants failed to make the first payment on the Note to plaintiff. No payment on the promissory note was ever made. Mr. Berkovitz testified that the reason for nonpayment was that he did not have the money. Following the default on the Note, in November 1990, plaintiff R & R brought an action against Formadyne for judgment on such Note. A judgment against Formadyne was entered on February 28, 1991, in Supreme Court, Suffolk County. It is undisputed that the parties had agreed on June 12, 1990, that R & R would be entitled to receive the proceeds on pending orders that were to be completed before June 30, 1990, and Formadyne would complete and receive the proceeds on any pending orders for delivery after June 30, 1990. Following the default on the Note by Formadyne, R & R stopped paying over the monies collected after October 15, 1990, which would have belonged to Formadyne. The amount thus accumulated by R & R is $14,000, which R & R has retained as execution on account of its judgment against Formadyne. The balance of the judgment obtained against Formadyne remains uncollected.
Despite early assurances by defendants Berkovitz that payment would be made on the Note, testimony by defendants’ accountant Lee Hanover clearly established that defendants had no such intention. The debt to plaintiffs was never recorded in defendants’ records and in conversation, Joseph Berkovitz explicitly stated he did not want to pay and needed legal advice. Moreover, portions of the original inventory that were warehoused were abandoned by defendants and were ultimately sold at auction to satisfy the warehouse lien.
At the end of November 1990, immediately following the onset of the lawsuit in Suffolk County, Formadyne was abandoned; all production and sale in the Formadyne name ceased, and production and sales were thereafter conducted *812 under the corporate name of defendant Colonial Redi-Records Co., Inc. (Colonial). Mr. and Mrs. Berkovitz are the sole shareholders of Colonial. Testimony was adduced establishing that Joseph Berkovitz remained in control of the day-to-day operation of Colonial, as he had been of Formadyne. All monies received by Formadyne, which were substantial, were disbursed by Mr. Berkovitz immediately upon receipt. There were substantial preferential payments of Formadyne funds to Berkovitz family members directly and to third parties in payment of Berkovitz’s personal debts. All Formadyne debts were paid except for the debt to plaintiffs. After the Formadyne bank account was exhausted, Colonial paid all remaining Formadyne creditors. Colonial also continued to make monthly mortgage payments on the two commercial buildings and on the residence owned personally by Mr. and Mrs. Berkovitz. On January 8, 1991, Colonial issued a $25,000 check to Formadyne which, Mr. Berkovitz testified, was for the sale to Colonial of some of Formadyne’s inventory and one year’s use of Formadyne’s equipment. There were no documents to evidence the sale or lease, or listing the inventory or equipment. The Formadyne equipment is still being used by Colonial without any further payment.
The testimony and evidence before the court demonstrated that the business premises, employees, administration, management, and machinery of Colonial are the same as those used by Formadyne. Colonial uses the same equipment, produces the same products, sells to the same customers, buys from the same suppliers, and has the same bookkeeper, lawyer, accountant, and bank as Formadyne. Colonial uses the RediRecords’ name and logo in its corporate name and business papers and continues to market the same line of products as Formadyne had produced after the purchase from Redi-Records using the names “Colonial Formadyne”, “Redi-Records”, “R & R” and “Colonial R-R”.
It is further clear from the records in evidence that Formadyne, presumptively and apparently solvent prior to the transfer of plaintiffs’ assets, was rendered insolvent and essentially liquidated by the direct and indirect transfer of its assets to defendants.
CONCLUSIONS OF LAW
In this action to enforce the judgment of February 28, 1991, and to set aside the allegedly fraudulent transfer of assets, defendants’ affirmative defenses of “res judicata”, “statute of *813 frauds” and “laches” are unavailing. (See, Julien J. Studley, Inc. v Lefrak, 48 NY2d 954 [1979], affg 66 AD2d 208 [2d Dept].) Plaintiffs concede, however, that they have retained $14,000 in money collected upon pending orders which properly belonged to Formadyne in partial satisfaction of the judgment obtained by R & R in the Supreme Court, Suffolk County. This sum must be offset upon defendants’ counterclaim against any recovery by plaintiffs.
Plaintiffs’ first cause of action asserts a claim of fraud against defendants Berkovitz alleging that the Berkovitzes made misrepresentations that Formadyne was solvent and intended to pay the money due to R & R under the promissory note when, in fact, they intended to breach the contract. The gravamen of this claim is indistinguishable from the claims of fraud brought pursuant to Debtor and Creditor Law §§ 273 and 276. Moreover, an independent claim for fraud does not arise where such claim relates only to an intention to breach a contract. (Tesoro Petroleum Corp. v Holborn Oil Co., 108 AD2d 607 [1st Dept 1985]; cf., C.B. Western Fin. Corp. v Computer Consoles, 122 AD2d 10, 12 [2d Dept 1986].) In light of the fact that a judgment has already been entered on the underlying breach of contract and Note, and whereas plaintiffs are afforded complete relief under their third cause of action, infra, the first claim is redundant, as is the second pleaded cause of action against the corporate defendants, alleged to be “alter egos” of the Berkovitzes.
Plaintiffs’ third cause of action seeks damages against all defendants under Debtor and Creditor Law §§ 273 and 276 for the alleged fraudulent conveyance of the property of judgment debtor Formadyne. Debtor and Creditor Law § 273 provides: “Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.”
Plaintiffs contend that the transfers of assets from Formadyne to Colonial and other defendants were made without fair consideration and rendered Formadyne insolvent, and, therefore, were presumptively fraudulent conveyances pursuant to Debtor and Creditor Law § 273. Defendants assert that the $25,000 paid by Colonial was only for a portion of the inventory of Formadyne and that most of the inventory purchased from Redi-Records is still in storage at Colonial’s factory. The fact remains, however, that all of such inventory remains in *814 possession of Colonial and that Colonial continues to use the equipment of Formadyne without any further payment. Thus, the court finds that Colonial’s payment of $25,000 to Formadyne did not constitute fair consideration for its assets, which included those assets that had been purchased from Redi-Records just five months earlier for $300,000, and that the subject transfers were thus constructively fraudulent conveyances pursuant to Debtor and Creditor Law § 273. (See, Julien J. Studley, Inc. v Lefrak, 66 AD2d 208, supra; Southern Indus. v Jeremias, 66 AD2d 178 [2d Dept 1978].) This conclusion is equally applicable to money paid to defendants Joseph and Barbara Berkowitz directly and indirectly to their personal creditors and relatives without any identifiable consideration to Formadyne, without which Formadyne would have had sufficient assets to pay its debt to R & R Closing Corp. As the Court found in Julien J. Studley, Inc. v Lefrak (66 AD2d, at 215-216): “The manipulation of corporate assets by the [defendants] in the face of the [plaintiffs] rights by preferring the interests of those in control of the corporation reflects bad faith and deprives the [defendants] of the status of transferees for fair consideration. The transfers stripped the corporations of their assets, rendering them insolvent [citation omitted]; they took place when the corporations were ostensibly engaged in business, leaving them an unreasonably small capital [citation omitted]; and they were made when the corporations knew that debts would be incurred beyond their ability to pay as the debts matured [citation omitted].” So also have the defendants herein improperly converted the assets of Formadyne and are thus liable to plaintiffs for their fraudulent conveyances pursuant to section 273 of the Debtor and Creditor Law.
Debtor and Creditor Law § 276 provides: “Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.” “The burden of proof to establish actual fraud under Debtor and Creditor Law § 276 is upon the creditor who seeks to have the conveyance set aside [citation omitted], and the standard for such proof is clear and convincing evidence [citations omitted].” (Marine Midland Bank v Murkoff, 120 AD2d 122, 126 [2d Dept 1986].) “[Fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act” (supra, at 128). The circumstances in the case at bar clearly and convincingly evidence defendants’ actual intent to defraud.
*815 The formation of Colonial and the transfers to it occurred shortly after the commencement of an action to enforce the Note against Formadyne. Additionally, as noted above, the evidence establishes, inter alia, that Colonial continues to use the same equipment, produce the same products, use the same inventory, and has the same business premises as Formadyne. The stockholders of Colonial are the same as those of Formadyne. The retention of control over property following a conveyance is an indication that such conveyance was fraudulent. (See, Marine Midland Bank v Murkoff, supra, at 129; Scola v Morgan, 66 AD2d 228, 232 [1st Dept 1979]; Southern Indus. v Jeremias, supra, 66 AD2d, at 181.) Moreover, the obligation to R & R was never recorded in defendants’ books. Rather, such records reveal payment of charitable contributions and personal obligations of defendants Berkovitz to third parties and transfers of substantial sums to Joseph Berkovitz and his relatives far in excess of any cognizable consideration therefor during the period immediately preceding Formadyne’s becoming defunct in or about December 1990. Intrafamilial transfers are inherently suspect and are often indicia of frauda, ent intent. (Polkowski v Mela, 143 AD2d 260, 262 [2d Dept 1988].) In December 1990, following commencement of plaintiffs’ suit in Suffolk County, defendant Joseph Berkovitz withdrew from Formadyne on his own account $39,313.75, a sum much greater than that taken in any prior month, in addition to “donations” of $800 and “mortgage” and “rent” payments of $6,945, also deemed to be for his personal benefit as the owner of the premises.
The court, therefore, finds that there was clear and convincing evidence adduced sufficient to show that the transfers of money and property from Formadyne to the defendants were made with actual intent to hinder, delay or defraud plaintiffs. In view of the court’s determination, the conveyances must be set aside to the extent necessary to satisfy the judgment previously granted against Formadyne. (See, 10-4 W. 108th St. Realty v Redwood Dev., 220 AD2d 279 [1st Dept 1995].) Since the total value of these transfers exceeds the amount due on the Note, judgment will be entered for plaintiffs upon the balance remaining on the Note plus interest after deducting the $14,000 retained by plaintiffs.
Having established an actual intent to defraud under Debtor and Creditor Law § 276, plaintiffs are entitled to recover reasonable attorneys’ fees. (Polkowski v Mela, supra, 143 AD2d, at 262; Scola v Morgan, supra, 66 AD2d, at 234.) On or about *816 April 14, 1997, plaintiffs’ counsel submitted an unsigned “Attorneys Affirmation” seeking counsel fees totaling $160,000 plus $6,740.40 in disbursements. Apart from the fact that the affirmation is unsigned, it does not include any representations regarding actual fees or computation of hourly rates and time expended. While the sum requested may be reasonable in light of the protracted nature of the litigation, this issue must be resubmitted to the court upon proper papers served on notice. It is noted that plaintiffs were awarded attorneys’ fees in the Suffolk County judgment.
Plaintiffs’ complaint also seeks punitive damages for intentional fraud. Punitive damages may be awarded upon a finding of actual intent to defraud under Debtor and Creditor Law § 276 only where a defendant’s conduct was gross and wanton and involved high moral culpability. (Blakeslee v Rabinor, 182 AD2d 390, 392 [1st Dept 1992].) It has been held that “the act of removing property from the reach of a creditor is not misconduct so 1 “ ‘gross and wanton’ ” ’ as to justify * * * an award [of punitive damages]”. (Marine Midland Bank v Murkoff, supra, 120 AD2d, at 132; see also, James v Powell, 19 NY2d 249, 260 [1967]; Blakeslee v Rabinor, supra.) Accordingly, the court finds that an award of punitive damages is not appropriate herein.
Plaintiffs’ fourth cause of action, which alleges a violation of Business Corporation Law § 1007, is without merit and must be dismissed as there has been no nonjudicial dissolution of Formadyne pursuant to Business Corporation Law article 10.
Plaintiffs’ fifth cause of action alleges that the Berkovitzes violated their fiduciary duty to the creditors of Formadyne. Such fiduciary duty is based on “the duty corporate directors and officers owe to creditors deriving from the principle that the corporate assets constitute a trust fund for the benefit of creditors”. (Marine Midland Bank v Murkoff, supra, 120 AD2d, at 133; see also, Julien J. Studley, Inc. v Lefrak, supra, 66 AD2d, at 213.) It has been held, however, that the creditor’s remedy is limited to reaching the assets which would have been available to satisfy his or her judgment if there had been no conveyance. (Marine Midland Bank v Murkoff, supra, at 133.) Thus, although plaintiffs are limited to the relief provided under plaintiffs’ third cause of action, they are also entitled to recover under this alternative theory against the individual defendants as constructive trustees of the assets of Formadyne held for the benefit of plaintiff creditor.
Plaintiffs seek judgment on their sixth cause of action against defendant Joseph Berkovitz based on an alleged personal *817 guarantee of payment. The document, known as a “heter iska”, reads as follows (exhibit 4):
“I the undersigned agree that the money due to Mr. Larry Heimbinder is in the amount of $250,000 and is a business matter. I will fufill [sic] my obligation that I will use this money to my understanding to generate profits. Therefore, we are partners in this deal, but I agree to pay Mr. Heimbinder $250,000 and 10% profit on [illegible] deal although he does not participate in the conduction of business. The balance remaining [profit? (illegible)] will belong to Joseph Berkovitz for his work and conduction of business even though the profit will exceed 10% I have no right to claim loss under [the?] terms of payment agreed in our contract. Attached to this is the Hebrew text.
“agreed to agreed to
« “(signed) Lawrence Heimbinder (signed) Joseph Berkovitz”.
As explained by Judge Baer in Leibovici v Rawicki (57 Misc 2d 141, 144 [Civ Ct, NY County 1968]): “ ‘Better Isske’ or ‘heter iska’ was a device developed in the 12th to 14th centuries to overcome the Biblical prohibition against charging interest by one Jew to another (Lev. 25, 36-38; Deut. 23, 19-20). It was patterned upon an agreement of partnership or joint venture. The ‘lender’ would supply the money and the ‘borrower’ or working partner had complete freedom to use the capital, and he guaranteed the investment against loss. He also guaranteed a minimum return (Horowitz, Spirit of Jewish Law, § 265, p. 492).”
Plaintiffs submit, in support of their contention that the “heter iska” was a personal guarantee, the decision of the Honorable Jules L. Spodek of this court entered in Berger v Baruch Ha’ Levi Moskowitz (Sup Ct, Kings County, index No. 15600/91), in which Justice Spodek found a similar instrument to be one for the payment of money and entered judgment thereon under CPLR 3213. However, Justice Spodek was confronted with a situation distinguishable from that here in that the only document before him was the “heter iska”, found to be the contract in its entirety between the individual (not corporate) parties, and which contained the following unequivocal language not contained in the document before this court: “I, also hereby guarantee for this loan, and give my house lo *818 cated on 683 Bedford Boulevard, which is registered under my name, as a collateral.” It is obvious that the intent of that document was not the same as that of the one before this court.
In an examination before trial, Michael Schlanger, plaintiffs’ attorney at the June 12, 1990 closing, testified that he had requested a personal guarantee from Mr. Berkovitz prior to the closing and that it had been refused by Berkovitz’s attorney Segal. Mr. Schlanger did not request a personal guarantee at the closing and did not recall Mr. Heimbinder making such a request. The document known as a “heter iska” was produced and translated by Mr. Berkovitz and it was at defendant Berkovitz’s insistence that such document was signed.
Plaintiffs’ exhibit 2 in evidence is a “Security Agreement” between Formadyne and Redi-Records securing the indebtedness of $300,000 with a schedule of personal property and inventory, signed by Joseph Berkovitz as president of Formadyne. At the end of the document is a provision for a “Guarantee”, next to which is handwritten the word “omit”. The name “Joseph Berkovitz”, which had been typed beneath the signature line for the guarantor, has been crossed out. Mr. Heimbinder testified at trial that “The lawyers. Which one, I don’t know” had written “omit” at closing and that he had been unaware that the guarantee provision was in the document (transcript, at 88-89). Mr. Heimbinder further testified that Mr. Berkovitz had explained to him that the heter iska was necessary because under Jewish law he was “not supposed to be charged interest” (transcript, at 91) and that Mr. Berkovitz had produced the heter iska from his pocket at the conclusion of the closing after there had been a discussion of guarantees. Mr. Heimbinder concluded: “There were no guarantees. They couldn’t reach an agreement” (transcript, at 67). It is clear that the heter iska was not intended to be a personal guarantee of the corporate debt of Formadyne but was “merely a compliance in form with Hebraic law”. (See, Barclay Commerce Corp. v Finkelstein, 11 AD2d 327, 328 [1st Dept 1960].)
Accordingly, plaintiff R & R Closing is entitled to judgment in its favor and against all defendants on the third cause of action in the sum of $250,000 plus interest thereon from February 22, 1991, and reasonable attorney’s fees. Defendant Formadyne is entitled to judgment against plaintiff R & R based on its counterclaim in the amount of $14,000 which sum shall be offset against plaintiff’s recovery.