Jane ROE, Plaintiff,

v.

Peter J. JOHNSON, Jr., individually and in his capacity as Chair of the Supreme Court Appellate Division Committee on Character and Fitness First Department; "John Does" 1–6, inclusive of Members of Committee on Character and Fitness in their individual and official capacities; Jane Doe, No. 1, in her individual and official capacity; Sarah J. Hamilton, individually and in her official capacity; Mauro Digirolamo, Esq., in his individual and official capacity; Kay C. Murray, individually and in her official capacity; Supreme Court of the State of New York, Appellate Division First Department, in its capacity as a rule-making body for the Admission of Attorneys and Counselors at Law for the State of New York Appellate Division First Department, Defendants.

No. 03 Civ. 8501(DLC).

United States District Court,
S.D. New York.

Sept. 1, 2004.

Jane Roe, New York City, for Plaintiff, pro se.

Monica Connell, Assistant Attorney General, State of New York, New York City, for Defendants.

## OPINION AND ORDER

COTE, District Judge.

*Pro se* plaintiff Jane Roe brings this action under a fictitious name against the Supreme Court of the State of New York, Appellate Division, First Department and several members of the First Department's Committee on Character and Fitness (the "Committee") in their official and individual capacities. Roe's complaint, filed with this Court's Pro Se Office on April 10, 2003, alleges that the Committee's questioning of Roe concerning her mental health violated Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132,[1] and brings

---

1. Under regulations promulgated pursuant to Title II:

A public entity may not administer a licensing or certification program in a manner that *subjects* qualified individuals with dis-

suit against its members in their individual capacities pursuant to Title 42, United States Code, Section 1983 ("Section 1983"). Roe also claims that the defendants failed to comply with a federal regulation requiring that public entities conduct self-evaluations of their policies to ensure that they are in compliance with the ADA. 28 C.F.R. § 35.105.

The defendants moved to dismiss the complaint on March 3, 2004. In lieu of an opposition, Roe filed a motion to strike the affidavit and materials accompanying the motion to dismiss. A pre-trial conference, which Roe did not attend, was held on March 19. On May 28, in response to the defendants' request, discovery in this matter was stayed pending resolution of the motion to dismiss. For the following reasons, the defendants' motion to dismiss the complaint is granted.

### Background

1. *The Complaint*

The following facts are taken from the complaint and documents on which the complaint relies. In or about July 2002, Roe filed an application with the Committee for admission to the Bar of the State of New York. Question 18(c)(1) of the application at that time asked whether the applicant had any mental or emotional condition that would adversely affect his or her ability to practice law.[2] Roe answered that she did not have any such condition. She alleges that while she suffers from depression, her condition does not substantially limit her ability to function or to practice law.

On or about January 6, 2003, Roe was asked by a member of the Committee and its secretary whether she could make herself available should the Committee have any questions concerning her application. She was not informed that she could choose not to attend or that she could be represented by counsel.

On January 27, Roe met with members of the Committee, during which she was questioned about various matters, including financial matters related to her bankruptcy and to lawsuits that she had filed on her own behalf. She describes the meeting as an adversarial and confrontational hearing. During the course of the Committee's questioning concerning the lawsuits Roe had filed, she stated that in one instance she was seeking damages for emotional anguish and distress. The Chair of the Committee ("Chair") then asked Roe whether she was being seen by a psychiatrist, how long she had been seeing the psychiatrist, and what diagnosis the psychiatrist had given Roe. Roe claims that the Chair was aware that she had answered Question 18(c)(1) in the negative. After the January 27 hearing, she received a letter from the Committee requesting that she provide a letter from a treating psychologist or psychiatrist describing her condition, prognosis, and diagnosis. Roe alleges that the Committee regards her as impaired within the meaning of the ADA.

abilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability.... 28 C.F.R. § 35.130(b)(6).

2. This is Roe's characterization of Question 18(c)(1). Neither party has provided a copy of Question 18(c)(1) as it was presented in the bar application completed by Roe. Question 13 of the New York state bar application available in 2004 asks applicants to "State whether you have ... (c) any mental or emotional condition or substance abuse problem that could adversely affect your capability to practice law?"

On or about March 2003, Roe contacted the Committee to inquire as to whether the Committee conducted a self-evaluation as required under an ADA regulation, 28 C.F.R. § 35.105 (the "Self–Evaluation Requirement").[3] She states that she had received no response from the Committee as of her complaint, dated April 4, 2003.

Roe's complaint presents the following claims. First, Roe contends that Question 18(c)(1) itself violates the ADA. Second, she seeks compensatory damages of $1,000 per day, to be assessed retrospectively and prospectively against the defendants for the Committee's violation of the ADA in questioning during the January 27 hearing. Third, she seeks compensatory damages of $1,000 per day commencing from January 27, 2003, to be assessed against the individual defendants under Section 1983.

## 2. *Prior Actions*

The following facts are based on public records. Roe has filed two state court claims related to her pending application for admission to the New York State bar. On January 31, 2003, Roe filed a motion with the Appellate Division, First Department seeking an order approving her application for admission to the bar. In support of her motion, she claimed, *inter alia,* that the Committee's questioning on January 27, 2003 concerning her mental health violated the ADA. Roe's application was denied on February 28, 2003 in an unpublished order citing the fact that Committee had yet to make its final ruling. She did not appeal this decision.

On August 25, 2003, Roe filed a second motion with the Appellate Division, First Department seeking an order recusing several members of the Committee and excluding certain materials submitted to the Committee concerning her character. This motion also included, *inter alia,* Roe's representation that the Committee delayed her admission in retaliation for her claim that the Committee had violated the ADA. This motion was denied in an unpublished order on October 17, 2003, which includes no reasoning. Roe did not appeal this ruling.

Roe has also brought two previous actions in this Court concerning this matter. In the first, *Roe v. Johnson,* No. 03 Civ. 2126(MBM) (S.D.N.Y. Mar. 27, 2003), she brought a complaint by order to show cause seeking an injunction preventing the defendants from requiring or further requesting or conditioning her admission to the New York State bar on information from her psychiatrist, as well as an award of unspecified monetary damages. Roe alleged violations of Section 1983, the due process clauses of the state and federal constitutions, and the ADA.[4] In her complaint, Roe described the Chair's questioning at the January 27 hearing regarding Roe's treatment by a psychiatrist.

This action was dismissed *sua sponte* by Chief Judge Michael B. Mukasey on the ground that Roe's request for review of an ongoing state judicial proceeding violated the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and that her challenge to a state court order requiring production of

**3.** The ADA's self-evaluation requirement provides in part that

A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such ser-

vices, policies or practices is required, the public entity shall proceed to make the necessary modifications.

28 C.F.R. § 35.105(a).

**4.** Roe did not specify the Title under which she sought relief.

additional medical records violated the Rooker–Feldman doctrine.

In the second action, *Roe v. Hamilton*, No. 03 Civ. 4188(MBM) (S.D.N.Y. June 10, 2003), Roe brought a complaint by order to show cause seeking to enjoin the defendants from denying her admission to the New York State bar, from proceeding with a scheduled hearing, and from harassing and retaliating against her. She also requested an award of one million dollars in compensatory and punitive damages. Roe sought relief pursuant to the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and Section 1983. The complaint mentions the January 27 hearing although it does not describe the Chair's questions concerning Roe's psychiatric history.

This action was dismissed *sua sponte* by Chief Judge Mukasey on the ground that interference with state court proceedings would violate the *Younger* doctrine and that the plaintiff's allegations of conspiracy, retaliation, and racial discrimination in violation of the Fourteenth Amendment were vague and conclusory. Chief Judge Mukasey found that these two actions arose from the same set of facts and cautioned Roe that "the continued filing of non-meritorious complaints may result in an order barring plaintiff from filing future complaints without first seeking leave of court." Roe's motion for reconsideration of the June 10, 2003 Opinion was denied on July 21.[5]

### Discussion

The party seeking to establish jurisdiction has the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir.2003) (citation omitted). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citing *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998)). When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint. *Shipping*, 140 F.3d at 131.

A court may dismiss an action for failure to state a claim pursuant to Rule 12(b)(6) only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

In addition to the pleadings, the court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial

---

**5.** In both of the actions before him, Chief Judge Mukasey weighed the "constitutionally-embedded presumption of openness in judicial proceedings," *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir.1992), and the harm that the plaintiff could suffer if she were not permitted to proceed under a pseudonym. He determined that the plaintiff's privacy concerns related to her mental health outweighed the presumption of openness and permitted the plaintiff to adopt the pseudonym "Jane Roe." Neither party has objected to the continuation of this practice in the present action.

notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (citation omitted). A court may take judicial notice of a public record pursuant to Rule 201(b), Fed.R.Evid. *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000).[6]

### 1. *Challenge to Question 18(c)(1)*

■ Roe argues that Question 18(c)(1), which asks applicants to the bar whether they suffer from any emotional or mental condition that would adversely affect their ability to practice law, violates the ADA. Federal courts have an obligation to ensure that standing exists and should resolve questions of Article III jurisdiction before reaching the merits of a plaintiff's claim. *N.Y. Pub. Interest Research Group v. Whitman,* 321 F.3d 316, 324–25 (2d Cir. 2003); *LaFleur v. Whitman,* 300 F.3d 256, 268 (2d Cir.2002). "To establish Article III standing, a plaintiff must ... allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *Baur v. Veneman,* 352 F.3d 625, 632 (2d Cir.2003).

A plaintiff's asserted injury must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130,

119 L.Ed.2d 351 (citation omitted); *see Baur,* 352 F.3d at 632. This analysis focuses on whether the plaintiff is the proper party to bring suit, and requires that the alleged injury affect her "in a personal and individual way." *Lujan,* 504 U.S. at 560 n. 1, 112 S.Ct. 2130; *see Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).

Roe answered Question 18(c)(1) in the negative when submitting her July 2002 application for the bar and alleges that the Committee was aware of her answer at the time of the January 27 hearing. She does not contend that her answer led either directly or indirectly to the Committee's questioning concerning her mental health, which was occasioned by her response to a question related to previously-filed lawsuits, or that she was harmed during the questioning by her answer to Question 18(c)(1). Roe fails to allege that the inclusion of Question 18(c)(1) harmed her personally and individually and has therefore failed to establish a concrete and particularized injury-in-fact entitling her to standing to pursue her claim that the question violates the ADA. The defendants' motion to dismiss the claim is granted.

### 2. *Claims Against State Entities and Committee Members in Their Official Capacities*

■ The Eleventh Amendment[7] protects nonconsenting states from being sued

---

**6.** Roe's motion to strike seeks to strike materials submitted by the defendants, including prior complaints filed by Roe and opinions issued in these prior actions, on the ground that they are relevant only to a motion for summary judgment. These documents are public records of which the court may take notice. *Rothman,* 220 F.3d at 92.

Roe also seeks to strike defendants' affidavit on the ground that it lacks a notary's signature and is therefore not properly sworn. The affidavit is signed and dated by an assistant

attorney general and substantially complies with the requirements of 28 U.S.C. § 1746. There is no basis to disregard the affidavit.

**7.** The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

for money damages by private individuals in federal court. U.S. Const. amend. XI; *Board of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 364, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This protection extends to state entities and to individual state employees being sued in their official capacities. *Garcia v. S.U.N.Y. Health Center of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). The immunity offered by the Eleventh Amendment is not absolute, however, and may be abrogated by Congress pursuant to a valid exercise of its power under section 5 of the Fourteenth Amendment ("Section 5"). *Tennessee v. Lane,* —— U.S. ——, ——, 124 S.Ct. 1978, 1985, 158 L.Ed.2d 820 (2004); *Garrett,* 531 U.S. at 364, 121 S.Ct. 955.

■ Under Section 5, Congress has the power to devise appropriate remedial and preventative measures to enforce the guarantees of the Fourteenth Amendment. *Lane,* —— U.S. at ——, 124 S.Ct. at 1986. This power "includes the authority both to remedy and deter violation of rights guaranteed by the Fourteenth Amendment by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Id.* at 1985 (citing *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 81, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)); *see also Garcia,* 280 F.3d at 108. Congress does not, on the other hand, have the authority to determine what constitutes a violation of the Fourteenth Amendment by enacting "measures that make a substantive change in the governing law." *City of Boerne v. Flores,* 521 U.S. 507, 519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997); *see also Lane,* —— U.S. at ——, 124 S.Ct. at 1986. "[I]n

order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." *Garrett,* 531 U.S. at 374, 121 S.Ct. 955; *see also Boerne,* 521 U.S. at 520, 117 S.Ct. 2157 (setting forth congruence and proportionality test). The Equal Protection Clause of the Fourteenth Amendment does not require states to make special accommodations for the disabled so long as their actions toward these individuals are rational. *Garrett,* 531 U.S. at 367, 121 S.Ct. 955.

*Garrett* held that Title I of the ADA, to the extent that it prohibits states from discriminating against individuals with disabilities in connection with conditions and privileges of employment, is an invalid exercise of congressional power under Section 5. *Garrett,* 531 U.S. at 374, 121 S.Ct. 955. Since Congress failed to develop a sufficient record to support a finding that the states had engaged in a pattern of unconstitutional discrimination against persons with disabilities in connection with employment,[8] there is no basis for the enactment of remedial or preventative legislation under Section 5. *Id.* at 370, 121 S.Ct. 955. Even if a pattern of unconstitutional discrimination by the states had been established, the rights and remedies against the states created by Title I would nonetheless raise concerns as to their congruence and proportionality to the injury. *Id.* at 372. *Garrett* does not address the validity of Title II.[9] *Id.* at 360 n. 1, 121 S.Ct. 955.

---

8. The Court specified that a few isolated incidents of discrimination by state actors "fall far short of even suggesting" a pattern of unconstitutional discrimination. *Garrett,* 531 U.S. at 370, 121 S.Ct. 955.

9. Following the decision in *Garrett,* the Second Circuit Court of Appeals determined that Title II in its entirety is neither congruent nor proportional with the requirements of the Fourteenth Amendment and therefore limited monetary claims against the states under Title

*Lane* recently established that Title II constitutes a valid exercise of Congress's Section 5 power as applied to cases implicating a plaintiff's fundamental right of access to the courts. *Lane,* —— U.S. at ——, 124 S.Ct. at 1992. The narrow application of Title II considered in *Lane* differs from Title I in two significant respects. First, Congress developed a legislative record documenting a pattern of discrimination against persons with disabilities in the administration of public programs and services and heard specific evidence about their exclusion from courthouses and court proceedings. *Id.* at 1990–91. Second, in addition to prohibiting the irrational disability discrimination targeted by Title I, Title II "also seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Id.* at 1988. These guarantees include the right of access to the courts, which implicates both the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment. *Id.* The application of Title II to claims related to a disabled plaintiff's right of access to the court is congruent and proportional in relation to the gravity of the documented harm and the level of judicial review appropriate to alleged deprivations of fundamental constitutional rights. *Id.* at 1993–94. *Lane* does not address any other applications of Title II. *Id.* at 1993; *see also Badillo–Santiago, MD v. Naveira–Merly,* 378 F.3d 1, 2004 WL 1687881 at *3 (1st Cir.2004) (discussing Title II only as applied to the right of access to the courts).

No court has addressed whether, subsequent to the decision in *Lane,* a plaintiff may receive money damages from a state based on a claim of discrimination against persons with disabilities seeking admission to a state bar. Because of the absence of legislative findings establishing a pattern of unconstitutional discrimination in this context, this application of Title II is not a valid exercise of congressional power under Section 5 and does not abrogate a state's Eleventh Amendment immunity.

The legislative record for the ADA does not include any findings documenting a pattern of state discrimination in the admission of attorneys to the bar, or more generally in the granting of licenses to professionals. *See* 42 U.S.C. § 12101; S.Rep. No. 101–116 (1989); H.R.Rep. No. 101–485 pts. 1, 2, 3 & 4 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267; H.R. Conf. Rep. 101–558 (1990); H.R. Conf. Rep. No. 101–596 (1990), *reprinted in* 1990 U.S.C.C.A.N. 565. Professional licensing is mentioned in the congressional record only in connection with the portion of Title III addressing the accessibility of test sites and the provision of accommodations with respect to testing conditions. *See, e.g.,* H.R. Conf. Rep No. 101–485 pt. 3 (1990), 1990 U.S.C.C.A.N. at 491. The specific application of Title II to a state's determination of an applicant's qualification for the bar is far removed from the type of discrimination in the administration of public programs and services that *Lane* found to be supported by the congressional record. *Lane,* —— U.S. at ——, 124 S.Ct. at 1990. The examples of discrimination discussed in the legislative history—for instance, the inadequate provision of public transporta-

---

II to those in which the plaintiff establishes that the violation was motivated by discriminatory animus or ill will based on the plaintiff's disability. *Garcia,* 280 F.3d at 109–111. Given the Supreme Court's decision in *Lane,* 124 S.Ct. 1978, it would appear that there is

no longer any basis to find the existence of a cause of action under Title II where no other fundamental right is implicated and the sole justification is the defendant's level of scienter.

tion and access to public facilities—do not support the existence of a pattern of discrimination in licensing that requires preventative or remedial legislation. *See, e.g.,* H.R.Rep. No. 101–485 pt. 2, 1990 U.S.C.C.A.N. at 366–82.

As *Garrett* established, there are insufficient congressional findings to demonstrate a pattern of state discrimination in the employment of persons with disabilities—a violation similar in substance to a claim of discrimination in the distribution of professional licenses. *Garrett,* 531 U.S. at 370, 121 S.Ct. 955. There is therefore no basis to determine that Title II, as applied to cases challenging a state's denial of admission to the bar, is necessary to enforce the Fourteenth Amendment in the face of an established pattern of state discrimination. In contrast to the situation confronted in *Lane,* the application of Title II to bar applicants, like Title I's general prohibition of employment discrimination, does not enforce basic constitutional guarantees whose violation would trigger a higher standard of judicial review. There is no need, therefore, to address the next prong of the Section 5 inquiry and determine whether Title II's remedial provisions are appropriately limited.

In sum, Title II, as applied to cases challenging a state's decisions concerning an applicant's admission to the bar, is an invalid exercise of congressional power under Section 5. Because the defendants' Eleventh Amendment immunity is therefore not abrogated in this context, Roe may not seek damages against the state, state entities, or state actors in their official capacities.

3. *Claims Under Section 1983 Against Committee Members as Individuals*

■ Roe seeks damages pursuant to Section 1983 against individual members of the Committee on the ground that their inquiries during the January 27, 2003 hearing and in subsequent letters violate her rights under the ADA. It is "well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir.1999). Prosecutors acting as judicial officers also enjoy absolute immunity for official acts associated with their function as advocates. *Bernard v. County of Suffolk,* 356 F.3d 495, 504 (2d Cir.2004). Absolute immunity extends not only to judges and prosecutors, but also to officials who perform functions closely associated with the judicial process, including parole board officials conducting parole hearings, federal hearing examiners, administrative law judges, and law clerks. *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (hearing examiners and administrative law judges); *Montero,* 171 F.3d at 760 (parole board officials); *Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir.1988) (law clerks).

■ The determination of whether an official is entitled to absolute immunity must be based on a functional approach that looks to the particular acts or responsibilities the individual performs. *King v. Simpson,* 189 F.3d 284, 287–88 (2d Cir. 1999). The policies underlying the grant of absolute judicial immunity—enabling judges and prosecutors to decide and prosecute cases without fear of adverse consequences and baseless suits—are implicated when an official performs a discretionary, adjudicatory function. *Montero,* 171 F.3d at 760–61. For this reason, "[a]bsolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." *Cleavinger,* 474 U.S. at 201, 106 S.Ct. 496 (citation omitted).

Under New York law, the appellate division in each judicial department appoints lawyers to a committee charged with investigating the character and fitness of each applicant and with reaching a determination as to whether she is entitled to admission to the bar. N.Y.C.P.L.R. §§ 9401, 9404; *see also* N.Y. Judiciary Law § 90. Pursuant to the mandated investigation, the committee may require the applicant to furnish additional information or proof of good character as the committee deems pertinent. 22 N.Y.C.R.R. § 602.1(d). If the committee fails to approve an application following investigation, the committee or a subcommittee is required to hold a hearing at which the applicant is given an opportunity to call and cross-examine witnesses, and to challenge and controvert adverse evidence. 22 N.Y.C.R.R. § 602.1(h). Following the hearing, the committee must render a decision recommending approval, disapproval or deferral of action on the application. 22 N.Y.C.R.R. § 602.1(j). The determination of an applicant's fitness for the bar is considered judicial in nature. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 481–82, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir.1996).

The individual members of the First Department's Committee on Character and Fitness are entitled to absolute immunity from Section 1983 claims arising out of the June 27 hearing on Roe's application. As described in the complaint, the June 27 session was conducted as part of the Committee's investigation into Roe's character and fitness and pursuant to its authority to require additional information concerning the applicant's good character. The Appellate Division's designation of authority requires members of the Committee to act in a quasi-prosecutorial, and an adjudicatory, or quasi-judicial, capacity. Both of these functions require the protection from concerns of adverse consequences and baseless suits that renders a grant of absolute immunity appropriate. The defendants' motion to dismiss Roe's claims against members of the Committee in their individual capacities is granted.[10]

### Conclusion

The defendants' motion to dismiss is granted. The Clerk of Court shall close the case.

SO ORDERED.

---

**10.** There is no need to evaluate Roe's request for unspecified injunctive relief in the concluding sentence of her complaint. Roe provides no description of the form or purpose of any such relief. Chief Judge Mukasey's previous opinions, 03 Civ. 2125(MBM) and 03 Civ. 4188(MBM), hold that the issuance an injunction in connection with the ongoing state proceedings in this action would violate the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see also Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). An injunction would be inappropriate in this action for the reasons described by Chief Judge Mukasey. It is worth noting that the defendants did not assert a general defense of res judicata in opposition to Roe's complaint. The doctrine of res judicata "precludes parties from litigating issues that were or could have been raised in a prior proceeding." *Perez v. Danbury Hospital*, 347 F.3d 419, 426 (2d Cir.2003) (citation omitted).