Jamie **EDELKIND, et al., Plaintiffs,**

v.

**FAIRMONT FUNDING, LTD., et al., Defendants.**

**Civil Action No. 06–12275–JLT.**

United States District Court, D. Massachusetts.

March 6, 2008.

---

450

Charles A. Lovell, Partridge, Snow & Hahn LLP, Providence, RI, for Defendant.

*ORDER*

TAURO, District Judge.

Plaintiff previously represented that he had not received a copy of Magistrate Judge Alexander's November 6, 2007 Report and Recommendations ("Report and Recommendations"). Accordingly, this court sent another copy of the Report and Recommendations to Plaintiff, and Plaintiff subsequently filed objections. Having duly considered Plaintiff's objections, this court still ACCEPTS and ADOPTS the Report and Recommendations of Magistrate Judge Alexander. For the reasons stated in the Report and Recommendation, this court hereby orders that:

1. Defendants' *Motion to Dismiss* [#11] is ALLOWED.
2. This case is CLOSED.

IT IS SO ORDERED.

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**
(Docket # 11)

ALEXANDER, United States Magistrate Judge.

On December 18, 2006, Plaintiffs, Jamie ("Jamie") and Linda Edelkind ("Linda"), filed the instant pro-se Complaint against Fairmont Funding Ltd., Aurora Loan Services LLC, Lehman Brothers FSB, Inc., and Issac Aryeh. The Complaint alleges breach of contract, conspiracy, violation of Jewish law and breach of a "Shtar Heter

Iska Agreement", all relating to a mortgage loan which Linda obtained on her former residence and the subsequent foreclosure of that property.

Defendants filed a Motion to Dismiss on February 23, 2007. On April 18, 2007, Judge Tauro granted the Motion to Dismiss as to Plaintiff Linda Edelkind and Jamie Edelkind. However, as to Jamie Edelkind, dismissal was without prejudice to filing a separate civil action provided he demonstrates that he has standing to reassert his claims. On May 3, 2007, Jamie's Motion to Vacate the April 18th Order of Dismissal was allowed and the case was re-opened, though the dismissal of Linda's claim remains in effect. In conjunction with Judge Tauro's vacating order, Jamie was ordered to file a response to Defendants' Motion to Dismiss, specifically addressing the standing issues.

On October 16, 2007, Judge Tauro referred the case to Judge Alexander for a Report and Recommendations regarding Defendants' Motion to Dismiss and the standing issues. For the reasons articulated below, this Court RECOMMENDS that the District Court ALLOW Defendants' Motion to Dismiss.

**Factual Background**

The following facts are gleaned in part from a decision of the United States Court of Appeals for the First Circuit, affirming Jamie's criminal conviction of bank fraud. Upon facing bankruptcy in the summer of 2000, Jamie began forging documents falsely representing his wife, Linda, as a well-paid executive of a fictitious technology company. The forged documents were then used to convince a lender to extend a mortgage of $800,000 in Linda's name in order to purchase the former "Honey Fitz" mansion in Hull, Massachusetts ("the Hull Property").

The forgery served as a catalyst for a much larger and elaborate bank fraud

scheme masterminded by Jamie. After purchase of the Hull Property, Jamie repeatedly refinanced the home for greater and greater amounts, each time paying down outstanding previous loans and retaining the surplus amount. Various lenders extended the loans based on Jamie's false representations and fabricated documents, most notably tax forms showing Linda to be earning from $200,000 to over $1 million annually.

Specifically, in August 2004, representing that Linda's annual income was $1.1 million, Jamie obtained a $3.3 million loan through Fairmont Funding, Ltd. ("Fairmont"). Fairmont funded the loan with the approval of Aurora Loan Services ("Aurora"), a subsidiary of Lehman Brothers, a federally insured bank. Lehman Brothers later purchased the loan. After Jamie used the proceeds to pay off previously obtained loans, he was left with a $569,878.83 surplus.

Around the same time in 2004, the Government charged Jamie with bank fraud in connection with loans from South Shore Savings Bank, Wells Fargo, and Washington Mutual Bank. Soon after, Linda and the Edelkind children fled to Norway. In February 2005, the Government filed a superseding information adding a fourth count directed to the Fairmont loan. After a jury trial later that month, a judgment of conviction was entered on each of the four counts. The Hull property was forfeited by the court, Jamie was sentenced to 60 months in prison and ordered to pay restitution.

The instant Complaint is related to the Fairmont loan, allegedly entered into under the parameters of Orthodox Jewish law. The Complaint states that on or about August 1, 2004, Fairmont agreed to provide a mortgage, subject to certain conditions (appraisals, insurance, flood zone,

survey information, etc.). Defendant, Issac Aryeh, conducted the mortgage negotiations. Further, the Complaint alleges that Fairmont did not request verification of Linda's income or assets. Fairmont did, however, arrange for two appraisals of the property, which placed the value between $5,000,000 and $5,200,000.

Pursuant to a document entitled "Shtar Heter Iska Agreement" ("SHI Agreement"), the Complaint alleges that Fairmont purchased an interest in the Hull property equal to $3,300,000. According to the Complaint, the arrangement under the SHI Agreement is considered an "investment" and not a "loan".[1] Even though Linda also signed standard mortgage documents and security instruments, the Complaint asseverates that such civil law documents do not alter the effect of the SHI Agreement, and that these were executed only to enable Fairmont to secure a mortgage lender. According to Jamie's interpretation, the civil contract components of the transaction incorporate the strict requirements of Orthodox Jewish Law, and as such the terms of the mortgage contract were entirely governed by the SHI agreement.

Jamie alleges that the SHI Agreement was breached on October 1, 2004 when Fairmont sold the purported loan to Aurora, in excess of $3,150,000, without the permission or notification of Linda, thereby denying her the option to repurchase Fairmont's investment. Further, Fairmont received both interest and principal in the sale to Aurora, in violation of the SHI Agreement. Jamie claims that, under the terms of the SHI Agreement, Fairmont owned a $3,300,000 share of the Hull property, with Linda owning the balance of equity (between $1,700,000 and $1,900,000 according to Fairmont's appraisal), but that no mortgage obligation was ever entered into. Jamie interprets the terms of the SHI Agreement to render the mortgage documents a "fiction" because they violated Orthodox Jewish Law. Through this interpretation, Jamie contends that neither Fairmont nor any subsequent holder of the instruments had any legal rights in the mortgage. As such, the Complaint alleges that Fairmont and Linda still own the property jointly as partners and neither Fairmont nor any other subsequent holder had any foreclosure rights.

**1.** The preamble to the SHI Agreement states, in relevant part:

"Jewish Religious law strictly prohibits the paying or receiving of interest on loans made between a provider of funds such as Fairmont Funding Ltd. and a receive of funds like yourself. However, when monies are advanced in the course of a business transaction, an agreement may be entered into whereby the provider appoints the receiver to invest the funds on the provider's behalf. It is stipulated that all losses on the investment claimed by the receiver must be proven by two valid witnesses, while the amount of profits may be proven through severe oath of the receiver or through the testimony of two valid witnesses. However, in order to avoid these very strict requirements, the provider of funds under this agreement, agrees, at the recipient's option, to waive his share of his profits, and instead, to receive a specific percentage of the money advanced. This percentage is therefore considered assumed profit rather than interest on a loan. In addition, selling mortgage loans has become an accepted practice that helps all mortgage bankers originate loans like yours at an affordable rate. However, as explained above, the arrangement between the provider and receiver is that of an investment, not of a loan. Accordingly, the customary mortgage loan documents being signed are to enable us to procure a loan from a lender that is permitted under Jewish Religious law, to charge interest. Fairmont Funding Ltd. will deliver the customary mortgage loan documents to the "purchaser" of your loan (who is actually your Initial "lender") and accept the funds received from the purchaser as full repayment of the aforementioned investment funds. The following agreement encompasses both our investment and loan procurement relationship . . ."

## Discussion

A motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir.2002); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir.2001). As the Complaint indicated, Jamie Edelkind was not a party to the transaction with Fairmont nor was he an owner of the Hull property. Still, upon dismissal of Linda's claims, questions remained as to whether her husband has standing to bring claims on his own behalf. Memorandum and Order at 16, *Edelkind, et al. v. Fairmont Funding Ltd., et al.*, C.A. No. 06–12275– JLT (D.Mass. Jan. 10, 2007).

█ In his brief on standing, Jamie maintains that "no proper jurisdiction exists for the court to consider standing, at this time." Brief in Support of Standing to Sue in His Own Name By Jamie Edelkind at 1, *Edelkind, et al. v. Fairmont Funding Ltd., et al.*, C.A. No. 06–12275–JLT (D.Mass. June 27, 2007). Jamie has flatly misstated the law: "Federal courts have an obligation to ensure that standing exists and should resolve questions of Article III jurisdiction before reaching the merits of a plaintiff's claim." *Roe v. Johnson*, 334 F.Supp.2d 415, 420 (S.D.N.Y.2004), citing *N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 324–25 (2d Cir. 2003); *LaFleur v. Whitman*, 300 F.3d 256, 268 (2d Cir.2002). Under Article III, Section 2 of the Constitution, the federal courts have jurisdiction over a dispute only if there is an actual "case" or "controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

█ A plaintiff bears the burden of establishing standing. *Lujan*, 504 U.S. 555, 560–61, 112 S.Ct. 2130. To establish standing, a plaintiff must have suffered "an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* In determining whether the injury-in-fact element has been met, only the facts in existence at the time plaintiff filed the lawsuit may be considered. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

█ Even though a plaintiff is not a party to a contract, he has standing to sue for breach if he is a third-party beneficiary of that contract. *Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F.Supp.2d 52, 67–68 (D.Mass.2002) citing *Monahan v. Town of Methuen*, 408 Mass. 381, 391, 558 N.E.2d 951 (1990); *Rae v. Air–Speed, Inc., et al.*, 386 Mass. 187, 194, 435 N.E.2d 628 (1982). Under Massachusetts law, any recovery by Jamie as a third-party beneficiary would require evidence that the parties to the SHI Agreement "intended to give [him] the benefit of the promised performance. We look to the language and circumstances of the contract for indicia of intention. The intent must be clear and definite." *Gambill v. Packard*, No. 10040, 2007 WL 2783675, at *2 (Mass.App.Div. Sept. 21, 2007) citing *Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366–67, 676 N.E.2d 821 (1997). Massachusetts has adopted § 302 of the Restatement (Second) of Contracts (1981) which provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b)

the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary. There is nothing in the terms of the SHI Agreement, nor in Jamie's brief on standing, that suggests he was an intended beneficiary. Absent express language to that effect, Jamie lacks standing to bring a breach of contract claim against Fairmont.

█ In an attempt to establish standing, Jamie relies on a somewhat confusing and misguided res judicata argument, averring that the issue of his standing was resolved when the "gross receipts" enhancement was applied in his sentencing following his criminal trial for bank fraud. On appeal, Jamie contended that the gross receipts were derived by his wife, in whose name the Hull Property had been acquired and to whom the proceeds of the refinancing scheme were directed. Further, Jamie directed the Court of Appeals' attention to a prenuptial agreement with his wife which provided that property and assets obtained by her were to be and remain her personal property.

The Court of Appeals, in rejecting Jamie's argument, further supported the application of the gross receipts enhancement, stating: "Given its aim, the guideline may be applied where the defendant either controls (even though indirectly) the fraud proceeds attributed to him or where he causes them to be lodged in another with the expectation that he will enjoy the benefits." *U.S. v. Edelkind,* 467 F.3d 791, 801 (1st Cir.2006). The District Court interpreted the sentencing guidelines to refer not to formal legal control of gross receipts, but instead to individual culpability. Standing was never addressed at Jamie's criminal trial. As the only member of the Edelkind family in privity with Fairmont, any cause of action for breach of contract rests solely with Linda, whose claims the Court has previously dismissed.

Concurrently, Jamie alleges breach of the SHI Agreement. In his brief on standing (filed per request of the Court), Jamie does not employ the SHI Agreement in arguing for his own standing. Rather, he merely mentions the SHI Agreement as new evidence which was not introduced at the criminal trial. Jamie did, however, file a separate brief on the effect of a Shtar Heter Iska Agreement in which he states the main purpose to be simply an assurance that the parties to an agreement who are Jewish do not violate the religious prohibition of charging civil interest on a debt.

█ In civil courts, Shtar Heter Iska agreements have been interpreted as "merely a compliance in form with Hebraic law", that does not create a partnership between the parties, and that causes of action based on an attempt to create obligations out of such an agreement are "devoid of merit." *See Arnav Indus., Inc. v. Westside Realty Assoc.,* 180 A.D.2d 463, 464, 579 N.Y.S.2d 382 (N.Y.App.Div.1992) (quoting *Barclay Commerce Corp. v. Finkelstein,* 11 A.D.2d 327, 328, 205 N.Y.S.2d 551 (N.Y.App.Div.1960)); *see also Heimbinder v. Berkovitz,* 175 Misc.2d 808, 670 N.Y.S.2d 301 (1998). A Heter Iska agreement does not alter the clear civil law terms of a note and a mortgage. Accordingly, the terms of such an agreement are not grounds for overturning foreclosure judgments. *See Arnav Industries, Inc.,* 180 A.D.2d at 464, 579 N.Y.S.2d 382.

Still, the fact remains that only Linda was a party to the SHI Agreement. Whether a "partnership" between Linda and Fairmont was created through the SHI Agreement, entitling Linda to an option to buy out Fairmont's investment before sale to Aurora, is not for this Court to

decide until standing has been established. *See Roe*, 334 F.Supp.2d at 420 (S.D.N.Y. 2004), citing *N.Y. Pub. Interest Research Group*, 321 F.3d at 324–25; *LaFleur*, 300 F.3d at 268. Regardless of this Court's interpretation of any legal effect of the SHI Agreement, Jamie has not presented anything to overcome the standing requirement.

## Recommendation

Jamie Edelkind has not established his standing to bring this claim. As such, the Court lacks subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Accordingly, for the reasons articulated above, this Court RECOMMENDS that the District Court ALLOW Defendants' Motion to Dismiss.

SO ORDERED.

November 6, 2007.